UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SCOTT ZAKI,

        Defendant.
_____/

Case No. 14-cr-20281-8

HONORABLE VICTORIA A. ROBERTS

## ORDER REGARDING COMPETENCY

**I.   INTRODUCTION**

For several months, the Court has endeavored to determine whether Defendant, Scott Zaki, possesses the requisite mental competency to stand trial. On June 13, 2016, the Court held a follow-up competency hearing to discuss the prior hospitalization and treatment Order (ECF No. 300) and to determine whether Mr. Zaki is now able to proceed with the case. Attending were: Henry Scharg on behalf of Mr. Zaki, and Brandon Bolling on behalf of the government. Two witnesses testified; they are Dr. Bryon Herbel, staff psychiatrist, and Dr. Tanya Cunic, a forensic psychologist, both at the Mental Health Department of the Federal Medical Center in Butner, North Carolina ("Butner"). Dr. Jeffrey Wendt, PH.D., P.C. and Dr. Carlton Pyant were also present, but not called.

The Court finds Mr. Zaki incompetent to stand trial, and orders he proceed with further evaluation and treatment.

**II.     BACKGROUND**

Mr. Zaki is charged with conspiracy to possess with intent to distribute and to distribute methylone under 21 U.S.C. § 846 and § 841(b)(1)(C).

The Court conducted an initial competency hearing on March 5, 2015.

On March 6, 2015, the Court ordered Mr. Zaki committed to the custody of the Attorney General for hospitalization and treatment, for a period not to exceed four months, to determine his competency to stand trial. He was admitted to Butner on May 19, 2015. Following the October 16, 2015 Hearing on Competency, the Court issued an Order on October 23, 2015, committing Mr. Zaki to the custody of the Attorney General for continued hospitalization, treatment, and evaluation for a period of four months at Butner. While there, Mr. Zaki was examined and treated by Dr. Herbel, Dr. Cunic, and Dr. Pyant, in addition to other members of Butner medical staff. Following this four month evaluation period, on February 16, 2016, Dr. Cunic issued a report recommending Mr. Zaki be certified as competent to understand the nature and consequences of the proceedings against him and to assist properly in his own defense.

In between when that report was authored and the date of the June 2016 hearing, Mr. Zaki demonstrated behavioral and psychological issues calling his competency into question. At the June 2016 hearing, Dr. Herbol revised his recommendation of competency, based upon updated behavioral reports from both the government and defense counsel in the two weeks prior to the hearing.

The June hearing revealed several facts of significance, which are set forth below.

Dr. Herbel testified that he had two conversations with counsel, one with Mr. Bolling approximately a week before the hearing and the other with Mr. Scharg on the morning of the hearing. Mr. Bolling informed Dr. Herbel of Mr. Zaki's (1) bizarre letters to the Court; (2) violent outbursts with staff and other inmates in jail; and (3) uncooperative behavior with Mr. Scharg. Mr. Scharg informed Dr. Herbel of Mr. Zaki's (1) poor judgment; (2) irrational thinking; and (3) inability to cooperate with Mr. Scharg. Dr. Herbel testified that diagnoses and behavior can change on a variable basis and that it would be possible for behavior to change over a period of days, weeks, or months. Moreover, individuals can hide or manipulate symptoms over a period of time, so it is possible for Mr. Zaki to be deemed incompetent at first, competent at a later date, and to revert to incompetence at yet a later point in time. He concluded that Mr. Zaki's recent behavior would cause him to change his recommendation of competency. He recommended Mr. Zaki undergo mandatory treatment with anti-psychotic medications.

Dr. Cunic also testified. She revealed that notwithstanding the Court's prior Order, very limited treatment and evaluation took place following Mr. Zaki's return to Butner. Despite Dr. Cunic's testimony that Mr. Zaki was cooperative, and, therefore, competent, the record reveals repeated incidents of uncooperative behavior. Her report states that during the final meeting with Dr. Pyant (shortly after the Court issued its October Order), Mr. Zaki "adamantly refused to undergo testing to assess his competency." For the ensuing period lasting between November 20 and December 16, 2015, Mr. Zaki "fluctuated between being withdrawn from all social interactions or responding with bizarre, nonsensical statements." When Mr. Zaki was informed he would be involuntarily medicated, he expressed that he would cooperate with medical

3

staff. Nevertheless, when it came time to cooperate, he failed to comply as he said he would. Following Mr. Zaki's noncompliance, on December 17, 2015, Dr. Cunic offered him an "agreement" under which he would not be involuntarily administered medication for a period of 30 days if he complied with medical staff and participated in interviews.

From mid-November 2015 through mid-January 2016, Dr. Cunic conducted joint but brief interviews with other staff and individual interviews alone with Mr. Zaki. The two most significant meetings were "structured competency interviews" on January 7, 2016, and January 13, 2016. The longest of these meetings lasted an hour and 15 minutes. These interviews were significantly shorter than those conducted by physicians earlier in the year, during which Mr. Zaki appeared behaved for the first several hours but showed symptoms of psychosis after three hours. Dr. Cunic did not administer any psychological tests to Mr. Zaki because he was too difficult and he would refuse to take written examinations. Mr. Zaki was never administered medications, voluntarily or involuntarily, during the four month evaluation period. Significantly, Mr. Zaki demonstrated uncooperative behavior throughout his "agreement period" with Dr. Cunic by being non-responsive when Dr. Cunic would make mid-morning and afternoon visits and by refusing to speak with other medical personnel.

### III. DISCUSSION

#### A. Competency

After a competency hearing, the court must, based on a "preponderance of the evidence," make a determination as to the defendant's competency to stand trial. 18 U.S.C. § 4241(d). The court's determination is reviewable on appeal by a "clearly erroneous" standard. *United States v. Ford*, 184 F.3d 566, 581 (6th Cir. 1999); *United*

*States v. Davis*, 515 F. App'x 486, 489 (6th Cir. 2013).

To be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *United States v. Miller*, 531 F.3d 340, 348 (6th Cir. 2008); *Dusky v. United States*, 362 U.S. 402, 402 (1960). "A criminal defendant may not be tried unless he is competent." *Godinez v. Moran*, 509 U.S. 389, 396 (1993).

Mr. Zaki does not meet either prong of the *Dusky* criteria. As discussed by Dr. Herbel, Mr. Zaki is unable to appreciate the nature and consequences of the proceedings against him and he is not able to work with an attorney in his defense. The Court finds that Mr. Zaki may not have a factual understanding of the proceedings against him; he certainly does not have a rational understanding. Additionally, based on Dr. Herbel's testimony, Mr. Zaki continues to have substantial impairments in his present ability to consult with and assist counsel with a reasonable degree of rational understanding.

Since Mr. Zaki did not receive medication during his recent period of evaluation and because he continues to demonstrate symptoms consistent with psychosis, Dr. Herbel requested an additional period of hospitalization and treatment to administer psychotropic medication. Dr. Herbel recommended that such treatment be mandatory – that Mr. Zaki be given an opportunity to orally take the medication, and, if he refuses, he be involuntarily administered the medication intravenously. The Court adopts this recommendation.

    B.    **Involuntary Treatment**

In making the decision to force Mr. Zaki to take involuntary pyschotropic drugs, the Court is guided by the Supreme Court's decision in *Sell v. United States*, 539 U.S. 166 (2003).

Absent consent, an individual has a significant constitutionally protected liberty interest in avoiding the administration of antipsychotic drugs. *Id.* at 178. The "'forcible injection of medication' into the body of a non-consenting person 'represents a substantial interference with that person's liberty.'" *United States v. Grigsby*, 712 F.3d 964, 968 (6th Cir.2013) (quoting, *Washington v. Harper*, 494 U.S. 210, 229 (1990)).

Even so, "the Constitution allows the Government to forcibly medicate a mentally ill criminal defendant who is not a danger to himself or others in order to render that defendant competent to stand trial for serious crimes." *Grigsby*, 712 F.3d at 969. Due process allows for involuntary medication of a convicted and mentally ill person if medical professionals determine the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest. *Grigsby*, 712 F.3d at 968 (citing *Washington*, 494 U.S. at 229). The Fourteenth Amendment provides the same level of protection to those awaiting trial. *Id.* at 969 (citations omitted).

To satisfy Due Process requirements, the Government must present clear and convincing evidence of four factors: (1) the existence of an important governmental interest; (2) that involuntary medication will significantly further the government interest; (3) that involuntary medication is necessary to further the governmental interest; and (4) that administration of the drugs is medically appropriate for the individual defendant. *United States v. Mikulich*, 732 F.3d 692, 696 (6th Cir. 2013); *Sell,* 539 U.S. at 180-81.

Dr. Herbel's testimony at the June 2016 Hearing and the Report dated February

6

16, 2016, are relied upon by the Court in making its findings that Mr. Zaki should be administered psychotropic medications, even if that involves involuntary treatment. The analysis of the *Sell* factors articulated by the Court in its October 23, 2015 Order is adopted in its entirety here.

Mr. Zaki's crime is sufficiently serious; he is charged with conspiracy to possess with intent to distribute and to distribute methylone, a crime with a statutory maximum sentence of 20 years. At the June 2016 hearing, Dr. Herbel stated that he would follow the same planned administration of medication that is outlined in his September 25, 2015 Report. Dr. Herbel's previous analysis is adopted in determining that the second *Sell* factor is met. Moreover, that non-medicated methods of treatment were previously attempted with no success underscores the need for involuntary administration of antipsychotic medication in this case; the third *Sell* factor is met. Finally, administration of drugs remains medically appropriate for Mr. Zaki; the fourth *Sell* factor is met.

### E. Summary of Treatment and Duty to Report to the Court

The Court authorizes the involuntary administration of antipsychotic medication as described in the Report's proposed treatment plan for a period not to exceed, without further Court order, the four month period of treatment as described in 18 U.S.C. § 4241(d). To the extent that the prior Order was deemed advisory by medical staff, this one should be deemed mandatory. This treatment is not optional and medical staff is not to deviate from the treatment plan on account of perceived cooperation. Mr. Zaki is to be offered the opportunity to take the prescribed medication orally. If he refuses, he is to be given the medication intravenously in the manner detailed by Dr. Herbel at the June 2016 hearing. The staff at Butner is authorized to involuntarily perform any

clinically indicated physical and laboratory assessments and monitoring for medication side effects during the evaluation period.

The Court's analysis of the *Sell* factors could change as Mr. Zaki's treatment progresses. Further psychological testing could reveal that involuntary medication is not warranted or that a less intrusive method of treatment is available. Additional information could arise regarding Mr. Zaki's condition that could change the Court's opinion regarding the appropriateness of involuntary treatment. Accordingly, the medical staff at Butner is ordered to file a status report with the Court after two months of treatment, detailing the medications administered, examinations conducted, treatment given, resistance or cooperation by Mr. Zaki, and preliminary findings.

### IV. CONCLUSION

Based upon the opinion of Dr. Herbel, the supplemental information about Mr. Zaki's behavior since the last competency hearing, and the Court's own observations of Mr. Zaki, the Court determines Mr. Zaki is **INCOMPETENT** to stand trial.

Pursuant to the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 4241-4247, the Court commits Mr. Zaki to the custody of the Attorney General for hospitalization and treatment at Butner, for a period not to exceed four months, as outlined above.

The time period associated with the process for determining competency is excluded under the Speedy Trial Act. 18 U.S.C. § 3161(h)(4).

**IT IS ORDERED**.

S/Victoria A. Roberts<br>United States District Judge

Dated: June 17, 2016